[Civ. No. 21855.   Second Dist., Div. Two.   Apr. 18, 1957.]

KEITH GARRICK, Respondent, v. J. M. P., INC. (a Corporation) et al., Appellants.

Wolver & Wolver for Appellants.

Robinson & Powers and Franklin K. Lane III, for Respondent.

ASHBURN, J.—Defendants J.M.P., Inc. and Cecil D. Pruitt appeal from a judgment rendered against them upon a promissory note for $19,500 which the court found to have been issued by the corporation to Pruitt without consideration, later purchased by plaintiff for $15,000 in good faith, before maturity and without notice of any infirmity therein. Their major defense of usury was rejected. The primary question upon appeal is the sufficiency of the evidence to sustain the findings. In stating the facts we shall accept, in accordance with the familiar rule of appellate review, all testimony and inferences favorable to respondent wherever the evidence presents a substantial conflict.

Plaintiff was in the plastering and general contracting business and defendant Pruitt in the development of subdivisions through the erection of houses and customary incidental activities. He was operating through defendant corporation, J.M.P., Inc., which was owned by himself and other members of his family. His official status was that of secretary. ██ In the latter part of September, 1950, plaintiff and Pruitt had a conversation in which the latter rejected plaintiff's plastering bid and then suggested that a better way for him to make money would be investing in the building business with Pruitt. He told of other investors and that they had been making from 25 to 50 per cent profit on their investments. Asked if he had any money to invest Garrick said he probably could get $10,000 to $15,000 for that purpose. Pruitt assured him he could make a profit of 25 to 50 per cent as other investors had done. Plaintiff wanted more information and was given a list of properties which defendant had under construction; plaintiff agreed to look at them and did so within the next two or three days. Pruitt said the construction was being done by a corporation of his, J.M.P., Inc., and that he was its secretary.

About October 3d he telephoned to Garrick saying he had worked out a deal whereby Garrick could make $4,500 by buying a note that had been made by J.M.P., Inc., to him,

Pruitt. "He stated that this would simplify everything because I would not have to sign any loan papers for the construction of these houses or be involved that way, so I asked Mr. Pruitt, 'Well, how do I get my money?' And Mr. Pruitt told me that he would give me an order on the escrows, that I would be paid through the sales escrows, and I said, 'Fine.' And I thought that we could work out something on it." Pruitt also said in that conversation that he would give plaintiff a letter to show that he was willing to sell him for $15,000 a note which he had received and which had a face value of $19,500. "Q. Did he tell you why he would give it to you? A. Well, strictly for my protection is the only thing I know of."

The parties met on the following day and Pruitt produced a note saying it was the one he had mentioned. It bears date of that same day, October 4th, is payable to the order of Pruitt and is signed by him as secretary of the corporation, having no other signature. The principal sum is $19,500, payable eight months after date with interest at 6 per cent, and the note specifies that interest will be waived if the note is paid within eight months from date. Pruitt had given the corporation nothing for the note but he did not tell Garrick of that fact. When plaintiff looked over the note he asked Pruitt "if he would mind if I took the note to the West Florence Escrow Company and have them put a stamp on it which calls for full recourse. Mr. Pruitt said that this would be absolutely all right and that he would also give me a letter where I would be paid from the escrows." Apparently the instrument already bore a typewritten assignment from Pruitt to Garrick which in terms was expressly made "with recourse." With the note Pruitt also presented to plaintiff two letters dated October 4th; one of them, Exhibit 4, was signed by himself as an individual and reads as follows: "As per our conversation, I have a note executed by J.M.P., Inc. to C. D. Pruitt for $19,500, bearing 6% interest due in eight months. If paid within eight months the 6% interest is to be waived. This is secured by sales escrow orders at the escrow company on the enclosed list of twenty-eight buildings. At this time, I would be willing to sell this note for $15,000." The other, signed by Pruitt as corporate secretary, contained an agreement to "issue instructions to the escrow companies handling sales to pay to Keith Garrick out of each sale the sum of $500.00." Plaintiff took the note to the escrow company and there had placed

under the existing assignment a stamp which also assigned to plaintiff the said note "with recourse on us." This was also signed by Pruitt. In exchange for the note and letters plaintiff delivered his check of October 4th for $15,000 payable to Pruitt. It was endorsed by him and apparently deposited in the corporate bank account on October 5th. Plaintiff did not request these letters or otherwise enter into the formulation of the transaction, which had been presented to him as an investment. He testified that there was at no time a request for a loan and no mention of a loan between him and Pruitt. ■ It is an established rule, as stated in *Lindsey* v. *Campbell*, 132 Cal.App.2d 746, 750 [282 P.2d 948], that: "The presumptions of law are in favor of legality; and therefore if the transaction in question is open to two constructions, one making for legality, the other for illegality, then in the absence of evidence pointing clearly to usury, it is the duty of the court to adopt the construction in favor of lawfulness."

*Rose* v. *Wheeler*, 140 Cal.App. 217, 220 [35 P.2d 220]: "The contention of the defendant is that the transaction was not a loan of money, but a sale of certain corporate stock to plaintiff upon credit, and further that defendant has not even yet been able to realize the return of any of his money.

"If there was a *bona fide* transaction of purchase and sale, and not a loan or forbearance of money, the usury law has no application." "Of course, the burden, and a heavy one, rests upon [plaintiff] to establish the evasion." (*Miley Petroleum Corp., Ltd.* v. *Amerada Petroleum Corp.*, 18 Cal. App.2d 182, 190 [63 P.2d 1210].)

Defendant's version of the instant transaction was that of an outright usurious loan to the corporation with the above mentioned letter (Exhibit 4) intended as a cover up. ■ Some of the circumstances related in plaintiff's testimony are strongly suggestive of the accuracy of defendant's version, but the trial judge stated in his summary of the case that "the defendant has not any credibility whatsoever." This appraisal we must accept as it has substantial basis in the record. ■ And we bear in mind, lest we yield to the temptation to substitute our own factual inferences for those of the trial judge, that a claim of insufficiency of the evidence "requires defendants to demonstrate that there is no substantial evidence to support the challenged findings. As was stated in the oft-cited case of *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, at page 429 [45 P.2d 183] : '. . . the

power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' which will support the findings, and when 'two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' " (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].) Moreover, "[t]o warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].) Mr. Justice Stone remarked in one of his dissenting opinions that the test of fitness to wield power is self-restraint in its exercise. In the light of the precepts just mentioned it is incumbent upon this court to hold that the evidence is legally sufficient to support the finding of innocence and bona fides in plaintiff's purchase of the note in question. The case closely resembles *Lindsey* v. *Campbell, supra,* 132 Cal.App.2d 746, wherein an investment in a subdivision project was revamped into promissory notes but not thereby changed in its essence or converted into a usurious transaction.

The case of *Smith* v. *G. Cavaglieri Mortgage Co.,* 111 Cal. App. 136 [295 P. 366], which appellants stress, is not controlling authority in their favor, for it turned upon the conclusion "that the finding of the court that the transaction was a purchase and not a loan, has no substantial support in the testimony" (page 144). In the case before us the record contains such substantial support for the crucial finding.

Appellant complains of various rulings upon evidence. One of them is the exclusion of certain testimony and rejection of an offer of proof of the usurious nature of a loan made in connection with Reliance Building Corporation, which was substantially concurrent with the transaction at bar. The merits of the contention do not require examination for the Reliance loan was fully proved at a later stage of the trial, it plainly was usurious, and appellants had the full

benefit of everything they sought to prove by their rejected testimony and offer of proof.

■ It appears from the evidence that plaintiff is part owner of West Florence Escrow Company, which has an office in the same building with him; that he took the note to that escrow company to have "a stamp on it which calls for full recourse." When asked if he was the owner of the escrow company objection was sustained upon the ground of immateriality, and counsel for defendants made an offer to prove by the witness that he was an officer and one of the owners of the escrow company, acquainted with promissory notes and with the drawing and the terms and conditions of promissory notes. Objection thereto was sustained. The substance of the matter is elsewhere in the record and there could be no prejudice from rejection of this proof.

■ On cross-examination of appellant Pruitt, plaintiff's attorney asked if C. D. Pruitt was his true name. Objection being overruled he answered in the negative, gave his true name as R. F. Cross, and then the following occurred: "Q. How long have you been in the construction business? A. I have a couple of other names when I was railroading, you know, that I worked under, if you want to know all of them. Q. No, your true name I said. How long have you been in the construction business?" This put defendant to the burden of explaining later the reasons why he had used the name Pruitt for some 25 to 30 years. This he did, and then upon recross-examination the following took place: "Q. Mr. Pruitt, isn't it a fact you changed your name because you went through bankruptcy in the 1920's sometime? A. It is not, I never went through bankruptcy, I have never been convicted of anything, I have never been arrested for any crime." Plainly this questioning about change of name and bankruptcy had only one purpose, the discrediting of defendant as a man rather than as witness. There was no issue whatever as to defendant's true name, nor any which involved it indirectly. *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 165 [195 P.2d 416], and cases therein cited, hold this type of examination to be improper. However, the evidence does not appear to have been prejudicial for the credibility of the witness had been so thoroughly destroyed in the view of the trial judge by other features of the case that this matter can be accorded little weight in any direction.

Other complaints concerning evidentiary rulings do not require discussion.

Plaintiff, in an effort to discredit the claim of a loan, offered certain evidence to the effect that defendants carried the Garrick matter upon the corporate books as a joint venture between plaintiff and defendant. This proof was offered by way of an admission of defendant showing that Pruitt did not prior to suit consider the transaction as a loan. Of course such admissions of defendant are not binding upon the plaintiff. Appellants seized upon this proof as a basis for (1) a motion to compel an election by plaintiff between allegedly inconsistent remedies,—an action on a note and one for an accounting of the affairs of a joint venture, (2) a motion for a nonsuit on the theory that plaintiff had proved only a joint venture and hence had pursued the wrong remedy in suing on a note, (3) a motion to strike the evidence of joint venture,—this on the theory of inconsistency of remedies, and (4) at the close of the trial a motion to amend their answer to conform to the proof by alleging a joint venture and a resulting loss which plaintiff must share. Having met adverse rulings upon these several matters, appellants claim error in each.

There was no occasion for an election. Plaintiff did not sue upon a joint venture. He stood on the promissory note, there being but one cause of action in his complaint. Neither he nor his attorney ever claimed that a joint venture existed in fact, merely that defendants had made an admission that there was no loan as claimed by them at the trial. The doctrine of election of remedies rests upon estoppel. (*Commercial Centre Realty Co.* v. *Superior Court*, 7 Cal.2d 121, 129 [59 P.2d 978, 107 A.L.R. 714]; *Perkins* v. *Benguet Consol. Min. Co.*, 55 Cal.App.2d 720, 758 [132 P.2d 70]; 1 Witkin on California Procedure, p. 548, § 51.)

And in the absence of prejudice to the opposing party no shifting of theories by one party can be precluded by application of the rule of election of remedies. However, as above indicated, there was no shifting of positions by plaintiff. He consistently stood upon the promissory note.

A nonsuit cannot be granted because of the existence of a conflict in plaintiff's own evidence. That which is most favorable to his cause must be accepted and the balance rejected. This is hornbook law. On defendants' motion at bar the evidence concerning joint venture was properly disregarded and the motion properly denied.

A motion to strike part of plaintiff's evidence upon the theory of inconsistency therein does not lie. An election

sometimes becomes proper, but counsel cite no authority for the proposition that the court may strike the portion of plaintiff's case which is favorable to him and thereby compel plaintiff to stand upon a ground selected for him by his adversary. That would be absurd.

Defendants' motion for leave to amend to conform to the proof by alleging a joint venture and a resulting loss was properly denied. Defendant Pruitt had previously testified factually and by way of conclusion that there was no joint venture, and hence defendants cannot complain of a denial of their motion to amend. They cannot blow hot and cold in this manner. "These two positions are entirely inconsistent. The court will not recognize or tolerate such tactics. A party cannot thus 'blow hot and cold.' (*McDanels* v. *General Ins. Co.*, 1 Cal.App.2d 454, 459 [35 P.2d 394, 36 P.2d 829]; *Chaquette* v. *Ortet*, 60 Cal. 594, 600.) The courts would be impotent indeed if they were compelled to approve such duplicity." (*Alexander* v. *Hammarberg*, 103 Cal.App. 2d 872, 879 [230 P.2d 399].) These considerations also dispose of appellants' complaint that they were precluded from proving that the alleged joint venture had operated at a loss.

Defendant Pruitt argues that there is error in holding him personally liable on the note because he endorsed it without recourse. The findings state that it was so endorsed but the original note bears two assignments or endorsements and both expressly say "with recourse." This error in the findings seems to stem from the fact that defendants' counsel misread the note in cross-examining plaintiff, substituting the words "without recourse" for "with recourse." The error crept into the findings, which appear to have been drafted by plaintiff's attorney. The judge failed to observe the mistake when signing the findings and at the same time rendered judgment against both defendants. Counsel for respondent join appellants' attorneys in discussing the case upon the basis of an endorsement without recourse. This persistence in mutual error is difficult to understand.

Plaintiff testified that when the note was presented to him he asked Pruitt if it would be agreeable for him to take the note to West Florence Escrow Company and have them put a stamp on it calling for "full recourse." There appears on the note a typed assignment reading "with recourse," and below that a stamped endorsement, also signed by defendant Pruitt, which says "with recourse." The stamp itself reads: "and ———— recourse on us," the blank obviously being left

for insertion of "with" or "without." The word "with" was inserted in this instance. It seems quite unlikely that, upon the facts of this case, the eminent trial judge would have rendered judgment against Pruitt in the face of an endorsement without recourse, and the inference is well-nigh inevitable that those words in the findings are the result of misprision. This is an appropriate occasion for amendment of the finding in aid of affirmance. (*Kastel* v. *Stieber*, 215 Cal. 37, 44 [8 P.2d 474].)

Finding III of the findings of fact and conclusions of law is amended by changing the second sentence thereof to read as follows: "Defendant Pruitt endorsed said note on the back thereof, expressly stating same to be with recourse, and delivered said note to the plaintiff Garrick."

The judgment is affirmed as to both defendants.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied May 14, 1957, and appellants' petition for a hearing by the Supreme Court was denied June 12, 1957.