[Civ. No. 27900. First Dist., Div. Two. Nov. 17, 1971.]

DEBRA MOE et al., Plaintiffs and Respondents, v.
TRANSAMERICA TITLE INSURANCE COMPANY et al.,
Defendants and Appellants.

## COUNSEL

Fields, Roos & McBride and Donald W. Rees for Defendants and Appellants.

William E. Ferriter, Louis F. Hawkins and Herbert Hawkins for Plaintiffs and Respondents.

## OPINION

**DAVID, J.**\*—This is an appeal by defendants Transamerica Title Insurance Company (hereafter Transamerica) and City Title Insurance Company (hereafter City Title) from a judgment on verdict awarding plaintiffs Debra Moe and David Baer compensatory damages in the amount of $80,000 and punitive damages in the amount of $50,000. Defendant title companies also appeal from a supplemental judgment awarding plaintiffs 7 percent interest on the sum of $80,000 to the date of entry of judgment and attorney's fees in the amount of $35,000.

The complexities of this fraud case regrettably require an extensive recital of the evidence supporting the judgments.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Plaintiffs' complaint contained three counts. In the first count, plaintiffs sought payment of a $102,400 note against defendants Joseph Ballarin, Gordon Anderson, Andrew Vranich and their *alter ego,* insolvent Dockins, Schmidt-Von Wanger & Co., Inc. (hereafter Dockins Corporation).

The second count of the complaint alleged that all of the individual defendants named in the first count, plus defendant City Title and its agent and employee, Ralph Olsen, had conspired to defraud plaintiffs; whereby their false representations persuaded plaintiffs to pay $80,000 for the purchase of a valueless note which was falsely represented to be secured collaterally by a note and deed of trust, equally valueless.

The third count of the complaint stated a cause of action against defendants City Title and Transamerica on a title policy issued to plaintiffs. It was alleged that the policy insured plaintiffs against any loss or damage not exceeding $100,000 by reason of unmarketability or defects in the instruments purportedly securing plaintiffs, as of the date of the issuance of the policy and endorsement; and that the statement of liens and encumbrances in said insurance policy as exceptions were known to be and were false and untrue as of the date the policy was issued and endorsed.

Plaintiffs prayed for compensatory damages in the sum of $102,400, plus interest thereon, and punitive damages in the sum of $50,000.

Defendants Anderson, City Title and Transamerica answered, but Ballarin, Vranich and Dockins Corporation defaulted. City Title Insurance executive Olsen disappeared prior to trial and was never served. It was agreed by plaintiffs that the liability of the defaulting defendants would be determined by the court upon the evidence introduced at the jury trial against all defendants.

The defendants did not offer any evidence.

The evidence produced at the trial may be summarized as follows: Brookdale Lodge was a California corporation (hereafter Brookdale), which owed $104,718.91 to the County Bank of Santa Cruz. The debt was in the form of a note secured by a first deed of trust on the Brookdale Lodge property. The bank had originally loaned the lodge $75,000, but by reason of additional advances, the debt had increased to $104,718.91. Brookdale was also indebted to Austen Zelmer, as trustee for mechanics' lienholders, in the amount of $46,415.62. This obligation was secured by a second deed of trust on the Brookdale property. In addition, Brookdale owed $100,000 to defendant Anderson, who was a shareholder and officer of the Brookdale Lodge corporation. Anderson had originally loaned the

corporation $107,294.86, which obligation was evidenced by a note secured by a third deed of trust. Brookdale had subsequently paid this debt down to a $100,000 balance.

Anderson was personally obligated to pay the $46,415.62 debt to Austen Zelmer, trustee, and to pay another debt which Brookdale owed to the Alpha Liquor Company.

On September 18, 1962, the Brookdale Lodge corporation filed its petition in bankruptcy pursuant to the provisions of Chapter X of the Bankruptcy Act. A trustee was appointed to operate the lodge.

Defendant Ballarin, doing business as the Home Investment Company, met defendant Anderson in October 1962. He represented he was a financial expert and indicated to Anderson that he could obtain a $300,000 loan so that Brookdale could avoid bankruptcy, and pay off the debts secured by the first and second deeds of trust on the property. During the course of several conversations between the two men, Ballarin told Anderson that it would be necessary for him to assign his note and deed of trust to Ballarin, and to execute a flat note in blank. Ballarin also suggested that an escrow should be opened with defendant Ralph Olsen, escrow officer at City Title, and that Anderson should order a preliminary title report on the Brookdale Lodge property.

Anderson did contact Olsen, as an officer of City Title, to order the title report; and Olsen, in turn, requested this of the Penniman Title Company in Santa Cruz. In December 1962, Olsen and Ballarin received a preliminary report from that company showing the various liens and encumbrances against Brookdale Lodge and disclosing that Brookdale had filed a petition in bankruptcy.

In January 1963, Anderson assigned his note and deed of trust to Ballarin. He also signed in blank a flat note in the amount of $102,400. Olsen forwarded the assignment of the Anderson deed of trust to the Penniman Title Company and asked that it be recorded and that the Penniman Title Company issue a $100,000 title policy insuring City Title. Olsen specifically requested that the Penniman Title Company delete from the title policy and closing report certain items which were contained in the preliminary report and which referred to the bankruptcy proceedings and certain other liens and encumbrances. The Penniman Title Company declined to comply with this request and its closing report omitted nothing.

Olsen had in the meantime contacted the County Bank of Santa Cruz and ascertained the exact amount of the debt owed it by Brookdale. Ballarin had also procured from one Charles Frye a written appraisal

showing Brookdale Lodge to be worth in excess of $1,000,000. There was no mention in the appraisal of liens, encumbrances or bankruptcy. Olsen and Ballarin had also obtained a letter from Anderson's attorney stating that the deed of trust represented adequate security for payment of the obligation. This letter likewise made no mention of the bankruptcy or of other liens and encumbrances.

City Title, acting by Olsen, issued a title insurance policy on January 25, 1963, insuring Ballarin in the sum of $100,000, subject to the defects, liens and encumbrances contained in said policy. The City Title insurance policy omitted any reference to the bankruptcy proceedings and the other liens and encumbrances which Olsen had sought to have omitted from the Penniman closing report. Olsen also wrote a letter to Ballarin explaining the liens and encumbrances mentioned in the policy, and omitting any reference to the bankruptcy proceedings or to any liens and encumbrances not mentioned in the policy.

Sometime in 1962, Ballarin had deposited $35,000 into the escrow at City Title. However, City Title then refunded this amount to Ballarin and the escrow became defunct.

In January 1963, Ballarin arranged for Olsen to open a new escrow at City Title. This escrow, like the first, was for the purpose of selling the Anderson note through Pioneer Title Insurance Company of Nevada. In connection with the second escrow, Olsen prepared a receipt indicating that a check in the amount of $24,738 had been received from Home Investment Company. On the same day, Olsen prepared a check request form disbursing $24,138 to Ballarin and $600 to the Pioneer Title Insurance Company of Nevada. The check supposedly received from Home Investment Company was returned as uncollectible and was found to be Ballarin's personal check and not a check drawn by Home Investment Company, as indicated on the receipt. The check was also postdated January 31, 1963.

On February 5, 1963, Ballarin executed an unsecured note in the amount of $24,738 at 10 percent interest. Representatives of City Title subsequently managed to obtain security from Ballarin in the form of a deed of trust on certain Amador County property. However, in April 1964, Ballarin still owed an outstanding balance in excess of $23,000.

By April 1963, Anderson had begun to lose confidence in Ballarin, and he made certain inquiries of various individuals who had known Ballarin. Anderson became even more disillusioned as a result of his investigation, but on April 25, Olsen wrote him an extremely encouraging letter indicating that Ballarin was having great success in his efforts to obtain financing for the Brookdale Lodge. Olsen wrote the letter in his capacity as assistant

secretary of City Title, and he advised Anderson that an escrow had been established to obtain a new loan commitment for Brookdale Lodge. Olsen stated that a loan in the amount of $650,000 would be forthcoming from the San Francisco Financial Corporation and that an additional $100,000 would be furnished by Home Investment Company. Olsen further stated that Ballarin was negotiating directly with the San Francisco Financial Corporation and that Anderson would immediately be advised upon completion of the details.

In May or June 1963, Ballarin advertised in a newspaper of general circulation that the Anderson note and deed of trust in the amount of $100,000 was for sale at the price of $80,000. Kenneth Baer, the father of the two plaintiffs, Debra Moe and David Baer, saw the advertisement and contacted the MacWickers, two real estate brokers with whom he had done business in the past. Baer asked the MacWickers to check into the advertisement for him, and they agreed to do so. The MacWickers called the telephone number listed in the advertisement and left a message. They were then contacted by Ballarin, who came to their home to discuss the transaction with them.

Ballarin told the MacWickers that he was in the process of negotiating a new loan for the Brookdale Lodge and had a $500,000 commitment from some unidentified source. He stated that he needed $80,000 in working capital in the meantime and had therefore decided to sell the $100,000 note and deed of trust. Ballarin showed the MacWickers the Frye appraisal of Brookdale Lodge and the letter from Anderson's attorney stating that the deed of trust represented adequate security for payment of the obligation. He also showed them the January 25 letter from Olsen to Ballarin explaining the liens and encumbrances specified in the City Title policy. The MacWickers told Ballarin that they would like to see the lodge, and Ballarin agreed to show it to them on June 16.

The MacWickers went to Brookdale Lodge on June 16 and asked the clerk at the desk for Ballarin. Ballarin met them in the bar shortly thereafter, but indicated that they should hold their discussion elsewhere because there were "too many ears around." They then drove to a restaurant where they discussed further details of a purchase of the note for $80,000. Ballarin stated that he wanted an option to repurchase the $100,000 note in nine months for $102,400.

On the same day as their visit to Brookdale Lodge, the MacWickers went to see Kenneth Baer and told him that they were favorably impressed with the lodge and with the transaction proposed by Ballarin. The MacWickers had brought with them all of the documents shown to them by

Ballarin, and Baer examined them. He then decided to go ahead with the purchase.

Mrs. MacWicker went to City Title on June 17, at Ballarin's request, and deposited $5,000 furnished by Baer. She was shown a receipt and escrow instructions indicating that in addition to the $100,000 Anderson note, Baer was also to receive as security a flat note in the amount of $102,400 executed by Dockins Corporation. Mrs. MacWicker asked Olsen about the flat note, and he told her that it represented additional collateral security for her client and that the Dockins Corporation was a big property owner with good assets. She relayed this information to Baer, who then paid the full $80,000 purchase price. Pursuant to his instructions, title to the notes and deed of trust was placed in the names of his children, plaintiffs Debra Moe and David Baer, with each of them taking an undivided one-half interest.

The upshot of the transaction was that plaintiffs received as security a $102,400 flat note executed by Dockins Corporation and collateral security consisting of the Anderson $100,000 note and deed of trust, which had been assigned by Anderson to Ballarin, by Ballarin to Dockins Corporation, and by Dockins Corporation to plaintiffs.

Mrs. MacWicker had requested that a title insurance policy be issued covering the plaintiffs' interest. Instead, she received an assignment of the title policy which had been issued to Ballarin in January 1963. Mrs. MacWicker thought this unusual, and she called Olsen and asked why he had issued an assignment of Ballarin's policy rather than a new policy. He assured her that the assignment was just as good as a new policy and furnished equally complete protection for her clients.

In fact, the Ballarin title insurance policy, as noted above, omitted reference to the pending bankruptcy proceeding, indicated that the first deed of trust on Brookdale Lodge secured a debt of $75,000 rather than $104,718.91, and indicated that the Anderson note and deed of trust were subject to encumbrances totaling $206,061.68 rather than $264,637.26.

Dockins Corporation ultimately defaulted on the flat note, and plaintiffs never received any portion of the $102,400. The bankruptcy proceedings resulted in the sale of Brookdale Lodge free and clear of all liens and encumbrances, including plaintiffs'. Thus, plaintiffs received nothing whatever for their $80,000.

At the conclusion of the trial, the court rendered judgment in favor of plaintiffs and against the defaulting defendants Ballarin and Dockins Corporation in the sum of $80,000 compensatory damages, $50,000 puni-

tive damages and $35,000 in attorney's fees. The court held that plaintiffs should take nothing against defendant Vranich.

Plaintiffs moved for a directed verdict against defendant Anderson on the flat note, stipulating that the judgment should be in the amount of $80,000 and that no award of attorneys' fees would be made. The court granted the motion.

Defendant Anderson then moved for nonsuit on the fraudulent conspiracy count and plaintiffs concurred in the motion. The court granted the motion.

Plaintiffs moved for a directed verdict against City Title and Transamerica on the title insurance policy. The court granted the motion and directed the jury to return a verdict on the policy in favor of plaintiffs and against defendant title insurance companies in the amount of $80,000. This was proper. (Cf. *E. A. Robey & Co.* v. *City Title Ins. Co.* (1968) 261 Cal.App.2d 517, 521 [68 Cal.Rptr. 38].)

On the fraudulent conspiracy count, the jury returned a verdict in the amount of $80,000 compensatory damages; and after appropriate instructions and deliberation, awarded $50,000 punitive damages against defendants City Title and Transamerica.

On March 6, 1969, judgment was entered in favor of plaintiffs and against defendants City Title and Transamerica in the amount of $80,000 compensatory damages and $50,000 punitive damages.

On May 1, 1969, a supplemental judgment was entered against defendants City Title and Transamerica awarding plaintiffs 7 percent interest on the sum of $80,000 from June 18, 1963, to the date of entry of judgment, and attorney's fees in the amount of $35,000.

Defendants City Title and Transamerica filed notice of appeal from both the March 6 judgment and the May 1 judgment.

Appellants' first contention on appeal is that respondents' allegedly usurious conduct precluded any award of interest on their loss. Appellants also contend that the court should have permitted them to inform the jury that respondents were guilty of usury.

■ Appellants assert that respondents' claim arises out of their loan of $80,000 in return for a flat note for $102,400, with interest included, payable nine months after its execution. Appellants contend that the only reasonable interpretation of the interest provision is that the interest was to be $22,400 or approximately 34 percent per annum. Appellants concede that respondents took the position at the trial that there was no loan but

merely a purchase of the $107,294.86 Anderson note secured by a deed of trust. However, appellants assert that in fact the transaction can only be characterized as a loan and that plaintiffs admitted this to be the case when they based their claim against Anderson on the flat note. Appellants' position is without merit.

Respondents' recovery against appellants was not on the note alleged to be usurious. Compensatory damages in the amount of $80,000 were awarded to respondents on the title insurance contract and also as damages for appellants' fraudulent conduct. The trial court's findings show that the award of interest on the $80,000 was based upon the fraud count and ran from the date of the conspiracy to defraud respondents. It is clear that whether appellants' liability be treated as arising in contract or in tort, the award of interest was proper. Appellants' contention to the contrary was rejected in *Ruth* v. *Lytton Sav. & Loan Assn.* (1969) 272 Cal.App.2d 24 [76 Cal.Rptr. 926].

Since appellants' liability was not based upon the allegedly usurious note, it would have been totally improper for appellants to argue the defense of usury to the jury. Usury is a defense personal to the borrower and may not be asserted by one who is not a party to the usurious contract. (*Sosin* v. *Richardson* (1962) 210 Cal.App.2d 258, 266 [26 Cal.Rptr. 610]; *Domarad* v. *Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 560-561 [76 Cal.Rptr. 529].) Appellant title companies were clearly not parties to the transaction claimed to be usurious.

Further, the evidence shows that the transaction was not in fact usurious and that respondents intended only to purchase a note at a discount. It is settled that the mere purchase of a note at a discount is not affected by the usury law. (*Milana* v. *Credit Discount Co.* (1945) 27 Cal.2d 335, 340 [163 P.2d 869, 165 A.L.R. 621]; *Limpert* v. *Walker* (1937) 19 Cal.App.2d 500, 503 [65 P.2d 955]; *Harris* v. *Pollack* (1950) 101 Cal.App.2d 26, 28-29 [224 P.2d 824].) The presumptions of law are in favor of legality and if a transaction is open to two constructions, then in the absence of evidence pointing clearly to usury, it is the duty of the court to adopt the construction in favor of lawfulness. (*Garrick* v. *J.M.P., Inc.* (1957) 150 Cal.App.2d 232, 236 [309 P.2d 896].) It is also the rule that the burden of showing evasion of the usury law must be met by evidence clearly showing usurious intent. (*Milana* v. *Credit Discount Co., supra,* at p. 341.) The evidence in the instant case falls far short of establishing that respondents were guilty of usury.

Appellants next contend that there was no evidence that the assurances made by City Title in the endorsement to the policy assigned to respondents

were incorrect. Appellants reason that respondents were therefore precluded from recovering on the insurance contract.

As for the validity of the argument, appellants have chosen to overlook the fact that the endorsement contains the following language: "This indorsement is made a part of said policy and is subject to the schedules, conditions and stipulations therein, except as modified by the provisions hereof." The policy insures against loss or a damage not exceeding $100,000 which the insured shall sustain as a result of "1. Any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule C, *existing at the date hereof* [emphasis added], not shown or referred to in Schedule B or excluded from coverage in Schedule B or in the Conditions and Stipulations; or . . . 4. Priority over said mortgage, at the date hereof, of any lien or encumbrance not shown or referred to in Schedule B, or excluded from coverage in the Conditions and Stipulations, said mortgage being shown in Schedule B in the order of its priority; . . ."

■ An examination of the title insurance policy originally issued to Ballarin and subsequently assigned to respondents shows that it omitted any reference to the pending bankruptcy proceeding and to certain other existing liens and encumbrances against the Brookdale Lodge property. The uncontradicted evidence establishes that this omission was knowing and deliberate, since the title reports which appellant City Title had previously ordered from the Penniman Title Company listed each and every lien and encumbrance against the property and also listed the bankruptcy proceeding. Inasmuch as the bankruptcy, in and of itself, ultimately rendered respondents' security totally valueless, respondents were clearly entitled to recover against appellants on the title insurance contract.

■ Appellants next contend that even if respondents were entitled to recover on the title insurance contract, they waived such right to recover by failing to comply with certain provisions which were contained in the policy and which required respondents to "promptly notify" appellants of their loss and to give written notice within 60 days after the loss or damage was determined. Appellants assert that although respondents learned of the bankruptcy proceeding in October or November 1963, they presented no claim against appellants until July 1965, when the instant action was commenced.

The record reveals that respondents' actual loss did not occur until July 2, 1965, when the Brookdale Lodge was sold by order of the federal court free and clear of respondents' deed of trust. Until such time, respondents' loss or damage was not determined. Respondents acted promptly when their loss occurred and commenced this action on July 21, 1965.

Prior to the actual sale of the lodge, appellants were at all times well aware of the pendency of the bankruptcy proceeding, having intentionally omitted it from their title insurance policy. Appellants were therefore also charged with constructive notice of any facts which they might have learned had they acted prudently and made inquiries as to the progress of the bankruptcy proceeding. (Civ. Code, § 19.) Appellants obviously made no attempt to do so.

The most glaring weakness in appellants' position is that they made no attempt whatever to demonstrate at the trial that they were prejudiced by the alleged lack of notice. Indeed, appellants failed to call a single witness.

 It is settled that breach of a notice clause by an insured may not be asserted by an insurer unless the insurer was substantially prejudiced thereby; that prejudice is not presumed as a matter of law from such breach; and that the insurer has the burden of proving actual prejudice and not just a mere possibility of prejudice. (*Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 141 [85 Cal.Rptr. 693]; *Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728, 737 [79 Cal.Rptr. 326, 456 P.2d 982]; *Hanover Insurance Co.* v. *Carroll* (1966) 241 Cal.App.2d 558 [50 Cal.Rptr. 704]; *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303, 305-307 [32 Cal.Rptr. 827, 384 P.2d 155].)

 Moreover, the facts of the case are such that prejudice could not possibly have resulted. The bankruptcy proceeding was pending when respondents purchased the deed of trust on Brookdale Lodge, and appellants have failed to suggest any way in which they could have prevented the ultimate sale of the lodge, free and clear of respondents' security interest. Respondents' attorney participated in the bankruptcy proceeding and made every attempt to protect his clients' interest.

Appellants next contend that the award of attorney's fee to respondents was improper. Appellants contend that respondents were not entitled to recover the attorney's fees incurred in connection with the bankruptcy proceeding because respondents failed to comply with the notice provisions of the title insurance policy and thereby deprived appellants of the right to employ an attorney of their own choosing to participate in the bankruptcy proceeding. Appellants also deny that respondents were entitled to recover the attorney's fees incurred in prosecuting the instant action.

 The findings in support of the supplemental judgment awarding respondents attorney's fees shows that said award was based both upon the contract of title insurance and upon appellants' fraudulent conduct. The court specifically found that appellant title companies had fraudulently and proximately caused respondents to reasonably protect their interests by

suing third parties and that respondents were entitled to the reasonable value of the attorney's fees incurred.

It is settled that a person who is required through the tort of another to act in protection of his interest by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary attorney's fees incurred. (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645]; *Glass* v. *Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 437-438 [96 Cal.Rptr. 902].) This rule has been held applicable where the plaintiff, as a result of an escrow holders' tortious conduct, is compelled to bring suit against third persons *and* the escrow holder. (*Ruth* v. *Lytton Sav. & Loan Assn.* (1968) 266 Cal.App.2d 831, 844-846 [72 Cal.Rptr. 521]; *Northwestern Title Security Co.* v. *Flack, supra,* 6 Cal.App.3d at pp. 145-146.)

For respondents to appear and take part in the bankruptcy proceeding was a natural and probable result of appellant title companies' tortious conduct and we deem it of no legal importance that respondents' efforts to preserve their security proved unsuccessful. When the Brookdale Lodge was sold free and clear of respondents' deed of trust, it became necessary for respondents to bring the instant action against third persons and appellant title companies. The award of attorney's fees was unquestionably proper.

Appellants contend that respondents should not have been allowed to recover punitive damages against Transamerica because City Title alone was guilty of fraud and City Title ceased to exist in 1964, when it was taken over by Transamerica. Appellants do not quarrel with the amount of the damages or the court's power to award same in a fraud case, but they contend that even as punitive damages may not be awarded after the death of an individual defendant (*Evans* v. *Gibson* (1934) 220 Cal. 476 [31 P.2d 389]), they may not now be awarded against the corporate successor in interest of an allegedly "defunct corporation." Appellants cite no authority for this unique proposition.

The record shows that in its answer to the complaint appellant Transamerica designated itself as "Transamerica Title Insurance Company, a corporation, formerly known as City Title Insurance Company." Elsewhere in the answer, it was admitted that defendant Olsen was an employee and assistant secretary of "City Title Insurance Company, also known as Transamerica Title Insurance Company." Clearly, appellant Transamerica made no attempt in the trial court to contend that it was a corporation separate and distinct from City Title or that it was subject to

a different standard of liability. To the contrary, the above-quoted portions of the answer are, in effect, admissions that the two corporations are one and the same.

■ It is the general rule that a corporation formed by consolidation or merger is answerable for the debts and liabilities of the constituent corporations, whether they arise ex contractu or ex delicto. (19 C.J.S., Corporations, § 1630, pp. 1392-1393.) ■ The corporate entities of the constituent corporations are preserved, following consolidation, to the end that they may be served with process and called upon to defend any contract or tort action which may be brought against them. (*Isom* v. *Rex Crude Oil Co.* (1905) 147 Cal. 663, 666-667 [82 P. 319].) ■ Consolidation does not create an entirely new entity but " 'merely directs the blood of the old corporation into the veins of the new, the old living in the new.' [Citation.]" (*Mutual B. & L. Assn.* v. *Wiborg* (1943) 59 Cal.App. 2d 325, 329 [139 P.2d 73]; to the same effect, see *Jackson* v. *Continental Telephone Co.* (1963) 212 Cal.App.2d 510, 513-514 [28 Cal.Rptr. 1]; *J. C. Peacock, Inc.* v. *Hasko* (1961) 196 Cal.App.2d 363, 369 [16 Cal. Rptr. 525].)

Corporations Code section 4116 provides in pertinent part that upon merger or consolidation, the consolidated or surviving corporation shall be subject to all the debts and liabilities of the constituent corporations "in the same manner as if the consolidated or surviving corporation had itself incurred them."

Corporations Code section 4124 similarly provides that, following a merger, the parent corporation shall be deemed to have assumed all the liabilities and obligations of the merged corporation and shall be liable "in the same manner as if it had itself incurred such liabilities and obligations."

Corporations Code section 5400 provides that a dissolved corporation nevertheless continues to exist for the purpose of "prosecuting and defending actions by or against it, and enabling it to . . . discharge obligations. . . ."

In the instant case, as noted above, appellant Transamerica took the position at the trial that it was "formerly known as" City Title and that City Title was "also known as Transamerica. . . ." Further, in the recent case of *Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 565, footnote 1 [83 Cal.Rptr. 394, 463 P.2d 746], our Supreme Court resolved the question of corporate identity without any difficulty whatever, stating, "Defendant Transamerica Title Insurance Company is the successor in interest to City Title Insurance Company and both

are referred to hereafter interchangeably as 'defendant' or 'the title insurance company.' "

Under the circumstances here present, we find nothing in the least improper in the award of punitive damages running jointly against City Title, which continued to exist for the purpose of tort liability, and Transamerica, which succeeded to the tort liability of City Title. Punitive damages are a portion of such tort liability.

Appellents contend that the trial court erred in directing a verdict against them on the policy of title insurance because it was bound to influence the jurors and to induce them to determine the fraud issue in a manner adverse to appellants.

In support of this argument, appellants cite an inapropos case, *Guerbadot* v. *Sneckner* (1960) 185 Cal.App.2d 173 [8 Cal.Rptr. 141], which involved a totally dissimilar situation.

In the case at bar, it is apparent that by directing a verdict on the insurance contract, the trial court was in no way suggesting to the jury that appellants were guilty of fraud. In fact, the court instructed the jury as follows: "Now, the fact that I have instructed you to bring in directed verdicts against—a directed verdict against Transamerica Title Insurance Company on its contractual obligation in the amount of $80,000 and to bring in a directed verdict against Dr. Anderson on his contractual obligation in that same amount, should not be considered—shall not be considered by you in any way on the question of which party is entitled to a verdict on the issue of fraud, on the Second Cause of Action, nor does such direction intimate any view of my own on this issue of liability or as to which party is entitled to your verdict or as to whether or not punitive damages should be awarded."

After giving this instruction, the court asked if it was clear, and appellant's counsel replied in the affirmative.

In view of the court's clarifying instruction, it would seem clear beyond a doubt that the directed verdict on the insurance contract could not have influenced the verdict on the fraud count. Moreover, the evidence of appellants' fraud was so overwhelming that no reasonable jury could have returned a verdict in favor of appellants. The uncontradicted evidence established that defendant Olsen, who was an agent and employee of appellant City Title, was well aware of the bankruptcy proceeding pending against Brookdale Lodge but that he conspired with defendant Ballarin to conceal this fact from Kenneth Baer in order to induce the latter into paying $80,000 for a worthless security interest. Thus, the evidence shows that Olsen and Ballarin obtained an appraisal of the Brookdale Lodge and a letter from

Anderson's attorney, both containing no reference to the bankruptcy proceeding. In addition to these letters, Kenneth Baer was also shown a letter which was written by Olsen himself and which purportedly explained the liens and encumbrances against the lodge but again omitted all reference to the bankruptcy proceeding. Finally, Olsen issued a policy of title insurance which omitted all reference to the bankruptcy proceeding. He then undertook to assign it to respondents and affirmatively represented that the assignment afforded as complete protection as a new policy.

There was expert testimony in the instant case that a title insurance company is a trustee as to all principals to an escrow and that an escrow officer has a duty to each of the principals to act fairly and to disclose any facts which might materially affect their interests. The escrow officer should make a preliminary report available to the principals and should accurately describe the condition of the title. It is obvious that City Title, acting by and through its agent, Olsen, fulfilled none of these duties.

Deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact. (Civ. Code, § 1710, subd. 3.) ■■■ The intentional failure to disclose a material fact is actionable fraud if there is a fiduciary relationship giving rise to a duty to disclose it. (*Black* v. *Shearson, Hammill & Co.* (1968) 266 Cal.App.2d 362, 367 [72 Cal.Rptr. 157].) ■■■ The evidence in the instant case is susceptible of no other interpretation but that appellant City Title was guilty of actionable fraud.

■■■ Appellants' final contention is that the trial court erred in erroneously admitting evidence pertaining to another action filed against City Title.

Appellants' position is wholly without merit, since a letter which was read into evidence at the trial and which was written by appellants' associate counsel specifically refers to the action in question as being "predicated on fraud." Admission of the evidence pertaining to this action was clearly proper under Evidence Code section 1101, subdivision (b), since the evidence was relevant to prove motive, opportunity, intent preparation, plan, knowledge, identity and the absence of mistake or accident. Further, for the reasons pointed out above, admission of the evidence complained of could not conceivably have been prejudicial to appellants.

One further point requires discussion. Respondents have asked this court to award them attorney's fees on appeal and have filed the declaration of their attorney, William Ferriter, averring that he has devoted approximately 400 hours to the preparation of respondents' brief and feels that the reason-

able value of his services on appeal is $20,000. Appellants filed an opening brief which contained numerous assignments of error but with an extremely scanty reference to the lengthy reporter's transcript, and appellants thereby shifted to respondents the burden of adequately summarizing the evidence. Respondents' brief contains a fair, accurate and thorough review of the evidence, and it also contains a competent, clear and well-written analysis of the arguments raised and the law pertaining thereto. This court properly could award respondents an appropriate sum on appeal as attorney's fees. (*Wilson* v. *Wilson* (1960) 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725]; *Beverly Hills Nat. Bank* v. *Glynn* (1971) 16 Cal.App.3d 274, 289 [93 Cal.Rptr. 907].)

However, it would seem that the judgments herein affirmed are sufficient to reimburse the successful respondents.

The judgments are affirmed. Respondents will have their costs on appeal.

Taylor, P. J., and Kane, J., concurred.