(November 4, 1993)

■ Carolyn Ackerman et al., Respondents, v Price Water-house, Appellant. (And One Other Action and a Third-Party Action.) [604 NYS2d 721] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered April 1, 1993, based upon the memorandum decisions of Diane Lebedeff, J., dated March 28, 1991 and November 10, 1992, affirmed for the reasons stated by Gammerman, J., with costs. Concur—Murphy, P. J., Kupferman and Ross, JJ.

Wallach, J., dissents in a memorandum as follows: The purpose of the Statute of Limitations is to protect a defendant from stale claims (Duffy v Horton Mem. Hosp., 66 NY2d 473, 476-477), and perhaps equally important, to establish with certainty and predictability the point at which a claim accrues (Hernandez v New York City Health & Hosps. Corp., 78 NY2d 687, 694). In New York, we have historically treated professional malpractice, other than medical, as subject to a three-year Statute of Limitations (CPLR 214 [6]). Normally, the Statute begins to run upon termination of the professional services with relation to the transaction in question, the rationale being that a client is infrequently in a position to know the intricacies of his professional practitioner's representation at least until conclusion of the professional relationship (Siegel v Kranis, 29 AD2d 477, 480). In actions involving alleged reliance upon financial documents prepared by an accountant, the Statute begins to run when the accountant's work is received by the plaintiff (Meinhard-Commercial Corp. v Sydney, 109 AD2d 678).

Price Waterhouse was the accountant for the CPG limited partnerships, of which plaintiffs were limited partners. Technically, plaintiffs were not clients of Price Waterhouse, so

their claims for professional malpractice are more properly for simple negligence *(Fleet Factors Corp. v Werblin,* 114 AD2d 996).

Each year, beginning in 1981, Price Waterhouse distributed a K-1 partnership form to plaintiffs for assistance in preparing their individual income tax returns. Plaintiffs were apprised, as early as 1983, that the IRS viewed with disfavor a practice utilized by Price Waterhouse for deducting interest based upon the "Rule of 78". Price Waterhouse advised plaintiffs that it believed the Revenue Ruling in question (No. 83-84), disapproving of that methodology, was inapplicable to them, based upon the opinion of tax counsel; nevertheless, plaintiffs were specifically warned that should the IRS succeed in applying Revenue Ruling 83-84 to this partnership deduction, plaintiffs could expect substantial tax penalty consequences. When the IRS began sending 30- and 60-day notices of deficiency to plaintiffs in 1984, Price Waterhouse again relied on the opinion of the partnerships' special tax counsel in advising that the partnerships' viewpoint would likely prevail on appeal.

By 1986, plaintiffs had exhausted their administrative appeals of the 30- and 60-day notices, and were now aware, on advice of their own tax counsel as well as Price Waterhouse, that continued utilization of the Rule of 78 in calculating interest deductions would probably subject them to litigation. The IRS then began issuing statutory notices of deficiency, known as 90-day letters. During the pendency of those proceedings, an unrelated Tax Court ruling upheld the retroactive application of Revenue Ruling 83-84 *(Prabel v Commissioner of Internal Revenue,* 91 USTC 1101, *affd* 882 F2d 820), causing plaintiffs to settle essentially on IRS' terms.

Plaintiffs commenced the instant action for negligence and professional malpractice on April 10, 1990. Price Waterhouse's motion to dismiss on the ground of Statute of Limitations raised the question whether the Statute on this claim began to run when plaintiffs received the accountant's work, under existing principles of New York law, or whether the claims would not ripen until the IRS ultimately assessed tax deficiency penalties, up to seven years after Price Waterhouse had made the decision not to follow Revenue Ruling 83-84. The latter position was consonant with a view generally expressed by the Texas Supreme Court in a 1967 case *(Atkins v Crosland,* 417 SW2d 150), a rule now followed in a minority of States.

Basically, the *Atkins* rule provides that the Statute of

Limitations runs, in the absence of a concealed wrong, upon the fixation of damage exposure arising from the allegedly negligent act, rather than upon its commission. The development of the law on Statutes of Limitations has been in the direction of greater certainty in determining the precise point at which a claim accrues. The folly of the *Atkins* rule is that it reverses that trend, introducing an element of uncertainty. Even in this case, post our appellate pronouncement, it remains ambiguous when the claim would accrue. Is the running of the Statute to be triggered upon receipt of the IRS 30- and 60-day letters, upon receipt of the 90-day notices of deficiency, or upon some other event (any of which, it should be emphasized, would be completely dependent upon the actions of the third-party tax collector)? One State following *Atkins* has ruled that where the allegation is based upon negligent tax advice, the injury triggering the applicable Statute of Limitations is deemed to have occurred when the plaintiff taxpayer is notified of the actual assessment of a tax deficiency *(Snipes v Jackson,* 69 NC App 64, 316 SE2d 657, *review denied and appeal dismissed* 312 NC 85, 321 SE2d 899). For us to adopt this minority rule would mean turning our backs on certainty and predictability, and proceeding along an indistinct trail with random and uncertain markings.

Significantly, even in those relatively few States which have considered the *Atkins* rule, acceptance has not been universal. The Arkansas Supreme Court, for example, recognized the shortcomings of *Atkins* in holding that the Statute of Limitations for such professional negligence should commence when the accountant gives erroneous tax advice, not when the taxpayer is assessed a tax deficiency by the IRS *(Ford's Inc. v Russell Brown & Co.,* 299 Ark 426, 773 SW2d 90).

Furthermore, this is clearly the wrong case in which to overturn well-settled New York precedent on accrual of professional malpractice claims. Even were we to adopt the minority viewpoint of *Atkins,* it would be inapposite here, since plaintiffs, in the main sophisticated investors also guided by their own tax advisers, were never in the dark as to Price Waterhouse's methodology and its concomitant risks and consequences. I would reverse and dismiss the complaint as barred by the Statute of Limitations.