Filed 1/21/15  Takata Corp. v. Cal. Dept. of Corrections etc. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JON K. TAKATA CORPORATION,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>　　　Defendant and Appellant. | A136794<br><br>(Marin County<br>Super. Ct. No. 1002716) |

　　　Defendant California Department of Corrections and Rehabilitation (DCR) appeals from a judgment entered after the trial court granted in part and denied in part DCR's motion for summary judgment/adjudication and granted in part, denied in part a motion for summary judgment/adjudication brought by plaintiff Jon K. Takata Corporation, doing business as Restoration Management Company (RMC), and found in favor of RMC after a court trial.  DCR contends the judgment must be reversed because RMC's claims were barred for failure to file a government claim in the manner prescribed by the Government Claims Act (Gov. Code, § 910 et seq.).  We affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In the fall of 2007, RMC learned that San Quentin State Prison (San Quentin) was soliciting bids for "emergency hazardous material clean-up services" to be performed at the prison. RMC and at least one other contractor submitted a bid and RMC was awarded the contract. RMC began performing the work in November 2007. On or about February 28, 2008, DCR and RMC entered into a contract in which they set forth in writing their agreement that RMC would clean up lead-containing dust that had accumulated in San Quentin's four cell block buildings. The contract was a State of California form entitled "STANDARD AGREEMENT" and included a section for "Contract Disputes" that set forth a dispute resolution process for any disputes that arose relating to the contract. The contract provided that the term of the agreement was November 7, 2007 through June 30, 2008, and that the amount to be paid was $4.329 million. RMC successfully completed the work and DCR paid RMC in full by remittance dated June 30, 2008.

After RMC completed the work, one of its workers who had worked on the project filed a complaint with the Department of Industrial Relations (DIR) alleging that RMC should have paid—but did not pay—him prevailing wages for work removing old paint from walls contaminated with lead. DIR investigated the matter and determined the workers performed work that fit within the job classification of Lead Removal Worker and were therefore entitled to prevailing wages under Labor Code sections 1771 and 1774. DIR found that RMC violated those statutes by not paying prevailing wages for the classification and issued a civil wage and penalty assessment (the assessment) against RMC on December 19, 2008, for a total amount of $765,150.82, consisting of back wages of $619,005.82 and a $146,145.00 penalty. In the assessment, DIR informed RMC of its right to a review with the Labor Commissioner and of the option of requesting a settlement meeting. RMC sought review of the assessment before the Labor Commissioner and also requested a settlement meeting.

---

[1]The following facts are not in dispute.

Shortly after receiving the assessment, RMC, through its Chief Financial Officer Dave Glover, contacted Bob Sweeny, then-San Quentin State Prison's Associate Warden of Business Services, to discuss the assessment. In an email dated February 2, 2009, Sweeny told Glover that he was going to contact "our legal division in Sacramento and the environmental compliance unit" and that he "look[ed] forward to meeting [Glover] and hopefully resolving this issue." In an email to Sweeny dated July 31, 2009, Glover stated: "As you know, in order to avoid the potential of a significant increase to the prevailing wage liability we were facing, we agreed to settle with the DIR last month. As dictated by this resolution, we are now at the point where we need to fund." Glover informed Sweeny that the agreed upon amount was "in the neighborhood of $750,000.00" and stated, "you were going to check with your team in regards to any allowance/indemnification/subsidy which San Quentin might be able to provide. As soon as you get a moment, can you call me with any information you have?" RMC then settled the matter with DIR on or about June 12, 2009, and paid an amount less than the full amount assessed ($736,711.84) by check dated August 3, 2009.

On August 18, 2009, Glover sent Sweeny an email stating he had spoken with an attorney about the legal grounds for asserting and obtaining reimbursement of the settlement amount of $736,711.84 from San Quentin. Glover reported that under Labor Code sections 1773, 1773.2, and 1781, "public agencies, like San Quentin," were required to "specify in the call for bids for the contract, in the bid specifications, and in the contract itself, what the general rate of per diem wages is and whether this job is a prevailing wage job, or not." Citing legal authority, Glover further stated that a contractor is entitled to reimbursement from the public agency where the public agency fails to inform the contractor that the work to be performed is a prevailing wage job. Glover noted that San Quentin did not specify anywhere in its solicitation for bids, specifications, or contract that this was a prevailing wage job.

On October 28, 2009, Ronald Peck, counsel for RMC, wrote to Kathy Harker, counsel for DCR, "concerning [RMC's] claim against [DCR] for the sum of $740,000.00 relating to increased wages and benefits they were required to pay as a result of work

3

performed by [RMC] that was later determined by [DIR] to be work for which prevailing wages were to be paid." Peck reiterated the facts and legal grounds for seeking reimbursement of the amount RMC paid DIR in settlement of the assessment.

Over the course of the next several months, Peck and Harker exchanged communications regarding RMC's request for assessment, and Peck provided Harker with additional requested documents. On February 10, 2010, Peck stated that RMC was "anxious to resolve this matter one way or the other" and sent Harker a letter entitled "Amended and Restated Claim for Damages" in which he set forth in detail—and attached documents—relating to the claims RMC was asserting against DCR.

On March 2, 2010, Harker wrote Peck to say that DCR's investigation of RMC's request for reimbursement was still ongoing. She added, "please understand that your client may have obligations to perfect its claim pursuant to Government Code section 910 et seq. and any steps taken by [DCR] to evaluate your request within this department should not be considered a waiver of any defense available to [DCR] in another forum."

On March 4, 2010, Peck mailed a letter, a claim form, and a $25 fee to the California Victim Compensation and Government Claims Board (Claims Board) seeking reimbursement of the amount RMC paid in settlement of the assessment. Peck stated, "Claims and an Amended Claim were previously filed with the Department of Corrections on August 18, 2009, October 28, 2009 and February 10, 2010. We have been advised that they are still investigating the matter. [¶] Out of an abundance of caution, we are also filing a Claim with your office." On March 5, 2010, Peck mailed an amended claim form to the Claims Board stating the same claim but seeking attorney fees and costs in addition to the amount paid for the assessment.

On March 10, 2010, the Claims Board wrote to Peck, sating in part: "The claim does not include the date you were served with the complaint, which resulted in your claim for equitable indemnity. Please provide the exact date the complaint was served on you. If your claim was presented to the Board more than six months from the date of incident, it will be returned for not being presented within six months after the event or

4

occurrence as required by law. If the claim is not presented within the time allowed by law, no action will be taken."

On March 18, 2010, Peck wrote the Claims Board, stating: "In response to your request for additional information, there was no Complaint that resulted in our client's claim for indemnity. [¶] Further, our client's claim, although similar to an indemnity claim, is actually <u>statutory</u>. Labor Code § 1781 requires a State Agency, like San Quentin, to pay any increased costs incurred by a contractor (like [RMC]) as a result of a decision" by the [DIR]."[2] Peck stated that "the Labor Commissioner initially asserted that this was a prevailing wage job on December 19, 2008" and that the claim was settled, and payment was made by RMC to DIR in August 2009.

On March 29, 2010, the Claims Board denied RMC's claim, stating in part, "Based on its review of your claim, Board staff believes that the court system is the appropriate means for resolution of these claims, because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the Board." The Claims Board stated it had considered the claim only to the extent it asserted allegations that arose from facts or events that occurred in the six months prior to the date it was presented to the Board. On May 11, 2010, the Claims Board issued a "corrected notice" in which it stated that because RMC's claim "was filed more than one year from the date of the incident that is the basis of the claim, . . . it is too late for the Board to consider an application to present a late claim." The Claims Board stated: "It has been determined that the date of the incident that is the basis of this claim is December 19, 2008. As such, this claim was filed more than one year from the date of incident."

_____

[2]Labor Code section 1781 provides in part: "(a)(1) Notwithstanding any other provision of law, a contractor may . . . bring an action . . . to recover from the body awarding a contract for a public work . . . any increased costs incurred by the contractor as a result of any decision by the body, the [DIR], or a court that classifies, after the time at which the body accepts the contractor's bid . . . the work covered by the bid or contract as a 'public work,' . . . if that body, before the bid opening or awarding of the contract, failed to identify as a 'public work' . . . in the bid specification or in the contract documents that portion of the work that the decision classifies as a 'public work.' "

On May 25, 2010, following denial of the claim, RMC filed this action pleading five causes of action. The first cause of action alleged a violation of Labor Code sections 1726[3] and 1781. The second cause of action sought equitable indemnity, and the third cause of action alleged negligence. The fourth cause of action alleged negligent nondisclosure, and the fifth cause of action alleged a "tort of another." The complaint sought $736,711.84, attorney fees and costs including attorney fees under Labor Code section 1726, and interest. DCR demurred to the complaint, asserting that all five causes of action were barred for failure to file a government claim within one year of accrual of the causes of action, that the second though fifth causes of action were barred to the extent they sought reimbursement for attorney fees because the causes of actions for fees exceeded the scope of the government claim that was filed, and that the second through fifth causes action were non-statutory common law claims that could not be brought against the State of California.

RMC responded to the demurrer by filing a first amended complaint. The first amended complaint dropped the third through fifth causes of action and alleged facts to show that RMC had timely filed a government claim. In its first cause of action, RMC alleged it paid a civil wage and penalty of $736,711.84 because DCR had failed to notify RMC as required by Labor Code sections 1726 and 1781 that the work required the payment of prevailing wages. In its second cause of action, RMC alleged that an authorized employee of DCR had negligently failed to identify the contract work as a "public work" in violation of the "Labor Code sections referred to above," and that CDR was vicariously liable for the employee's actions. The first amended complaint prayed for the same damages, interest, and fees that had been requested in the original complaint.

---

[3]Labor Code section 1726, subdivision (c), provides that a contractor is entitled to attorney fees and costs in addition to reimbursement for wages and penalties where the public agency "affirmatively represented to the contractor in writing . . . that the work to be covered by the bid or contract was not a 'public work,' " or where the public agency "received actual written notice from [DIR] that the work to be covered by the bid or contract is a 'public work,' and failed to disclose that information to the contractor before the bid opening or awarding of the contract."

DCR demurred to the first amended complaint on substantially the same grounds as the demurrer to the original complaint, and the demurrer was overruled.

The court stated in overruling the demurrer to the first amended complaint that the first and second causes of action were not barred as a matter of law for failure to comply with the government claims requirements. The court determined that RMC's March 2010 claim was timely because the first cause of action was not a claim for indemnity that accrued upon DIR's presentation of the civil wage and penalty assessment, but rather was a violation of statute that accrued when RMC incurred increased costs in August 2009. The court determined the second cause of action was authorized under Government Code, section 815.6, which imposes liability on a public entity for injuries caused by the entity's failure to discharge a mandatory duty.

DCR answered the first amended complaint on February 7, 2011. In its answer, DCR asserted as a first affirmative defense that the complaint and all causes of action were barred for failure to present a government claim within one year of accrual of the cause of action. Following discovery, both parties moved for summary judgment or adjudication. Both motions asked the trial court to decide as a matter of law whether the first and second causes of action were barred for failure to file a timely government claim within one year of accrual.

In its ruling on the issue of whether a timely government claim was filed, the trial court stated: "Judge Adams concluded in her December 2010 order on demurrer that: 'The first cause of action is not a claim for indemnity that accrued upon presentation of the civil wage and penalty assessment by the [DIR], but rather a violation of statute that accrued when [RMC] "incurred" increased costs.' Based on the plain wording of Labor Code, section 1781, subdivision (a)(1), along with other authorities noted by the parties, this court agrees with Judge Adams's conclusion. If [RMC] had filed a government claim based on the DIR's initial notification, it would have appeared premature—given [RMC's] responsibility of avoiding or reducing any assessment through an administrative appeal. The undisputed facts show that [RMC] only 'incurred' increased costs [on] August 3, 2009 . . . Thus, [RMC's] claim filed in March 2010 was timely." The court

also addressed RMC's arguments that it was exempt from the claims filing requirements, that RMC had substantially complied with any claims filing requirements, and that DCR was estopped from raising the defense. The court expressed an opinion on each of those claims but determined they were "merely alternative arguments," and that in any event, involved material facts so that they could not be resolved by way of a motion for summary judgment.

The trial court granted DCR's motion for summary adjudication as to RMC's second cause of action (negligence), and the matter proceeded to court trial solely on the merits of whether RMC was entitled to recovery under Labor Code section 1781.[4] After trial, the court found in favor of RMC and ordered DCR to pay $736,711.84, plus seven percent interest per annum to accrue from August 3, 2009 (the date RMC paid the settlement to DIR) through the date of judgment. The court awarded RMC costs of suit as the prevailing party.

## DISCUSSION

DCR contends the judgment must be reversed because RMC's action was barred for failure to file a government claim in the manner prescribed by the Government Claims Act (the Act).[5] We reject the contention.

### 1. Summary Judgment

We review summary judgment rulings de novo to determine whether the moving party has met its burden of persuasion that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When the defendant is the moving party, the defendant must show either: (1) the plaintiff cannot establish one

---

[4]In its first cause of action, RMC also sought attorney fees and costs under Labor Code section 1726. Because RMC did not allege facts sufficient to state a claim for violation of Labor Code section 1726, i.e., that DCR affirmatively misrepresented or recklessly failed to disclose that the work was a "public work," the trial court allowed the first cause of action to proceed to trial only as to RMC's Labor Code section 1781 claim.

[5]DCR does not dispute that it was required—and failed—to inform RMC that the contract was for a public works project for which prevailing wages were due. DCR also does not challenge the trial court's determination on the merits of RMC's claim that RMC was entitled to reimbursement under Labor Code section 1781.

8

or more elements of a cause of action, or (2) there is a complete defense. If that burden of production is met, the burden shifts to the plaintiff to show the existence of a triable issue of fact with respect to that cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; Code Civ. Proc., § 437c, subds. (c) & (o)(2).)

In deference to the strong public policy favoring a trial on the merits, appellate courts are bound by the same principles governing the trial court's determination: the moving party's papers are strictly construed and the opposing party's papers are liberally construed. All doubts as to the propriety of granting the motion (whether there is any issue of material fact) are to be resolved in favor of the party opposing the motion, i.e., by a denial of summary judgment. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206; *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877 ["[S]ummary judgment cannot properly be affirmed unless a contrary view would be unreasonable as a matter of law in the circumstances presented"].) The proper interpretation of a statute and the application of the statute to undisputed facts are questions of law. (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1148–1149.)

## 2. Government Claims Act

### a. Applicability to Section 1781 Actions

Government Code section 905 provides that subject to certain exceptions, "all claims for money or damages against local public entities" must be presented to the responsible public entity before a lawsuit is filed. Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within a year. (Gov. Code, § 911.2.) Failure to present a timely claim bars suit against the entity. (Gov. Code, § 945.4; *State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1239.) The purpose of the claims statutes is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." (*City of San Jose v. Superior* Court (1974)

9

12 Cal.3d 447, 455.)  The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future."  (*Baines Pickwick Ltd. v. City of Los Angeles* (1999) 72 Cal.App.4th 298, 303; *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 123.)

Although the parties spend the majority of their appellate briefs addressing the timeliness of RMC's March 4, 2010 claim with the Claims Board, they also present some argument relating to the issue of whether the Act even applied to RMC's cause of action for a violation of Labor Code section 1781 (Section 1781).  DCR asserts the Act applied because claim filing requirements "are broadly construed to apply to any and all claims for money or damages" and a claim for reimbursement under Section 1781 is a "claim for money or damages."  RMC asserts it was not required to file under the Act for a violation of Section 1781, "which by definition is a government claim," and provides for the right to reimbursement "[n]otwithstanding any other provision of law."  RMC also asserts that even if the Act generally applies to Section 1781 actions, it did not apply in *this* case because the contract the parties entered into contained an alternative dispute resolution process, and the Act "authorizes a state agency . . . to substitute a contractual claim procedure as an alternative to the statutory claims procedure set forth in [the Act]."  RMC further asserts that even if the Act applied, it applied only to the "prevailing wages" portion—and not the "penalties" portion—of the assessment because Government Code section 905, subdivision (k), specifically excludes "penalties" from the definition of "money or damages."  We express no opinion on these arguments and need not—and therefore will not—decide whether the Act applies to Section 1781 claims generally, or whether it applied in this particular case, because even assuming the Act applied, we conclude that RMC satisfied its obligation under the Act by filing a timely claim with the Claims Board.

### b. Timeliness of RMC's Claim

The Act requires that, for actions for injury to person or property for money or damages, the plaintiff must present a claim to the Claims Board "not later than six months after the accrual of the cause of action."  (Gov. Code, § 911.2, subd. (a).)  "A

claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action." (*Ibid.*) The parties do not dispute—and we agree—that the one year period applies to RMC's Section 1781 claim because the damage suffered by RMC was not an injury to person or property. (Gov. Code, § 810.8 ["injury" is defined as "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate"].) The dispositive question, therefore, is when the Section 1781 claim "accrued."

Government Code section 901 provides in pertinent part: "[T]he date of accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon. However, the date upon which a cause of action for equitable indemnity or partial equitable indemnity accrues shall be the date upon which a defendant is served with the complaint giving rise to the defendant's claim . . . against the public entity."

Here, because RMC's action was based on a statutory right to reimbursement under Section 1781, and was not an action for "equitable indemnity" as DCR asserts[6], the cause of action accrued on "the date upon which the cause of action would be deemed to have accrued" under Section 1781. (Gov. Code, § 901.) The court held in *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1239: " 'The date of accrual of a cause of action marks the starting point for calculating the claims presentation

---

[6]DCR asserts that the "special rule" for accrual of equitable claims set forth in Government Code section 901 applies because RMC's Section 1781 cause of action was essentially an equitable indemnity claim. DCR states that because an equitable indemnity cause of action accrues when "a defendant is served with the complaint giving rise to the defendant's claim," the Section 1781 cause of action accrued on December 19, 2008, when the original assessment was served. We disagree. Although Section 1781 embodies an indemnity principle, it provides a statutory right to reimbursement without the weighing of equities, and is not an "equitable indemnity" action. Moreover, even if it were to be considered an equitable indemnity action, we would conclude that the original assessment issued on December 19, 2008, was not a final assessment, and cannot be analogized to a civil complaint.

11

period.  [Citations.]  "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.'  [Citation.]  In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations]—the elements being generically referred to by sets of terms such as 'wrongdoing' or 'wrongful conduct,' 'cause' or 'causation,' and 'harm' or 'injury' [citations]."  (*Norgart* [*v. Upjohn Co.* (1999) 21 Cal.4th 383,] 397 . . .; see also *Mosesian v. County of Fresno*, *supra*, at p. 500 ["A cause of action normally accrues when under the substantive law the wrongful act is done and the liability or obligation arises, that is, when action may be brought"].)  "A cause of action accrues for purposes of the filing requirements of the Tort Claims Act on the same date a similar action against a nonpublic entity would be deemed to accrue for purposes of applying the relevant statute of limitations."  (*John R.* [*v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438,] 444, fn. 3 . . . accord, *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 708.)' "

As noted, Section 1781, subdivision (a)(1), provides in part that a contractor may "bring an action . . . to recover from the body awarding a contract for a public work . . . any increased costs incurred by the contractor as a result of any decision by the body, the [DIR], or a court that classifies, after the time at which the body accepts the contractor's bid . . . , the work covered by the bid or contract as a 'public work,' . . . if that body, before the bid opening or awarding of the contract, failed to identify as a 'public work' . . . in the bid specification or in the contract documents that portion of the work that the decision classifies as a 'public work.' "  Section 1781, subdivision (c)(2), defines "increased costs" as including "[L]abor cost increases required to be paid to workers" for prevailing wages and "[P]enalties" for which the contractor is actually liable.

Thus, in this case, to prove the elements of Section 1781, RMC was required to show that:  (1) DCR, "the body awarding a contract for a public work"; (2) failed to identify the work as a "public work" "in the bid specification or in the contract

12

documents" "before the bid opening or awarding of the contract"; (3) the work was determined by DCR, DIR, or the court, to be a "public work" "after the time at which [DCR] accept[ed] [RMC's] bid"; and (4) RMC "incurred" "increased costs" in the form of wages and penalties "as a result" of that determination. Until those elements could be established, RMC did not have a Section 1781 claim, and any statutory claim filing period had not yet commenced. (See *K.J. v. Arcadia Unified School Dist.*, *supra*, 172 Cal.App.4th at pp. 1238–1239.)

On the issue of when RMC incurred "increased costs," DCR asserts that RMC incurred the costs when DIR served the assessment on December 19, 2008. RMC asserts the action accrued when it "paid" the wages and penalties on August 3, 2009, or at the earliest in June 2009, when "final determination was made" and it became "liable" or "required to pay" $736.711.84 in wages and penalties. We conclude the action accrued when the assessment became final and RMC became liable for paying the wages and penalties.

Section 1742, which sets forth the review process for DIR assessments, provides that a contractor who receives an assessment may obtain administrative review of that assessment "within 60 days after service of the assessment. If no hearing is requested within 60 days after service of the assessment, the assessment *shall become final.*" (Lab. Code, § 1742, subd. (a), italics added.) Subdivision (b) provides that if the contractor makes a timely request for administrative review, "a hearing shall be commenced within 90 days before the director . . . [¶] Within 45 days of the conclusion of the hearing, the director shall issue a written decision affirming, modifying, or dismissing the assessment. The decision of the director shall consist of a notice of findings, findings, and an order . . . Within 15 days of the issuance of the decision, the director may reconsider or modify the decision to correct an error, except that a clerical error may be corrected at any time." (*Id*., subd. (b).) Subdivision (c) sets forth the means by which a contractor may seek review by way of a petition for a writ of mandate with the superior court, and provides that the director's decision *becomes final* if no petition for a writ of mandate is filed within 45 days of service of the decision. (*Id*., subd. (c).)

13

Here, even though DIR's original assessment of December 19, 2008, placed RMC on notice that there *may* be an issue concerning the failure to pay prevailing wages, it was not until RMC filed a request for a review with the Labor Commissioner and request for a settlement meeting, and a *final assessment* was made in June 2009—in this case, by way of a settlement—that RMC was liable for wages and penalties, and in what amount. We conclude that the date the assessment became final was the date RMC incurred "increased costs" within the meaning of Section 1781. (See Civ. Code, § 2778 [providing that in the context of a claim for indemnity under a contract, "the person indemnified is entitled to recover *upon becoming liable*," italics added].) Thus, RMC's claim with the Claims Board, filed March 4, 2010, was timely, within the applicable one year limitation for filing a government claim under the Act.

Relying on cases involving malpractice actions against accountants for faulty tax advice, DCR asserts the Section 1781 cause of action accrued when RMC received the original December 19, 2008 assessment: "Case law establishing the accrual date of actions for injuries caused by tax assessments provides an instructive analogy here, the rule being that the accrual date of an action triggered by a tax assessment is the date when the government issues the tax assessment and notifies the taxpayer of the deficiency." (Citing, e.g., *Moonie v. Lynch* (1967) 256 Cal.App.2d 361, 364.) *Moonie v. Lynch*, and related cases, however, actually support RMC's position and our conclusion.

In *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 608, the Supreme Court addressed the issue of when a cause of action against an accountant for malpractice "accrues" for purposes of the statute of limitations. The Supreme Court rejected the Court of Appeal's determination that the action accrued upon receipt of an assessment by the Internal Revenue Services (IRS), which was "preliminary" in nature, and approved *Moonie v. Lynch*, *supra*, 256 Cal.App.2d 361, in which the Court of Appeal "employed a different measure" and held "that actual injury in accountant malpractice cases occurs on *final* tax deficiency assessment." (*International Engine Parts, Inc. v. Feddersen & Co.*, *supra*, 9 Cal.4th at p. 608, italics added.) The Supreme Court noted that the initial notice merely informed the client that his accountant "*may* [have caused]

14

imposition of tax deficiencies." (*Ibid.*) The Supreme Court held that such "potential liability" could not amount to actual harm and the accrual of a malpractice claim against the accountant until the final deficiency tax assessment issued. In so holding, the court noted, "The foregoing rule both conserves judicial resources and avoids forcing the client to sue the allegedly negligent accountant for malpractice while the audit is pending. It also avoids requiring the client to allege facts in the negligence action that could be used against him or her in the audit, without first allowing the accountant to correct the error (or mitigate the consequences thereof) during the audit process." (*Id*. at p. 620.)

Similarly, here, the "potential liability" RMC faced upon issuance of the original assessment of December 19, 2008, did not amount to actual harm and the accrual of a Section 1781 claim against DCR. The above malpractice cases therefore do not support DCR's position.

## DISPOSITION

The judgment is affirmed. Jon K. Takata Corporation, doing business as Restoration Management Company, shall recover its costs on appeal.

15

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Jenkins, J.